UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-----------------------------------------------------------------------X
RITA MERCADO,

                        Plaintiff,

     -against-

SUGARHOUSE HSP GAMING, L.P.; SUGARHOUSE
HSP GAMING, L.P. *d/b/a* SUGARHOUSE CASINO;
SUGARHOUSE HSP GAMING PROP. GP, L.L.C.;
JAY TARBELL, *individually*; and DOMENICK
MONTANARO, *individually*;

                        Defendants.
-----------------------------------------------------------------------X

Civil Action No.:
2:18-cv-03641-WB

**FIRST AMENDED COMPLAINT**

FILED
NOV -7 2018
KATE BARKMAN, Clerk
By_____Dep. Clerk

Plaintiff Demands a
Trial by Jury

Plaintiff, RITA MERCADO, as and for her First Amended Complaint against the above-named Defendants, respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against, retaliated against, and constructively terminated by her employer solely due to her sex/gender (specifically, her pregnancy).

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under Title VII of the Civil Rights Act of 1964.

3. This Court has supplemental jurisdiction over the State and City Causes of Action.

4. Venue is proper in this district based upon the fact that Defendants employed Plaintiff in and the events in question took place in the County of Philadelphia within the Eastern District of Pennsylvania.

5. On or about November 7, 2017, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against Defendants as set forth herein.

6. On or about June 27, 2018 the EEOC issued Plaintiff her Notice of Right to Sue.

7. This action was commenced within 90 days of receipt of the EEOC Right to Sue Letter.

8. In her original Complaint, Plaintiff reserved her right to amend the Complaint to include causes of action under the PHRA and PFPO once such causes of action were ripe.

9. As of November 7, 2018, one year has passed since Plaintiff initially filed her Charges of Discrimination. Accordingly, Plaintiff's causes of action under the PHRA and PFPO are now ripe.

10. As more than 21 days have passed since Plaintiff filed her original Complaint, Plaintiff has obtained written consent from Defendants to file this Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## PARTIES

11. Plaintiff RITA MERCADO (hereinafter also referred to as "Plaintiff" and "MERCADO") is an individual female who resides in Gloucester County, within the State of New Jersey.

12. At all times material, Defendant SUGARHOUSE HSP GAMING, L.P. was and is a foreign limited partnership duly organized and existing under the laws of the State of Delaware.

13. At all times material, Defendant SUGARHOUSE HSP GAMING, L.P. used and continues to use SUGARHOUSE CASINO as a registered fictitious name under which to do business within the Commonwealth of Pennsylvania.

14. At all times material, Defendant SUGARHOUSE HSP GAMING PROP. GP, L.L.C. was and is a foreign limited liability company duly organized and existing under the laws of the State of Delaware.

15. At all times material, Defendants SUGARHOUSE HSP GAMING, L.P., SUGARHOUSE HSP GAMING L.P. *d/b/a* SUGARHOUSE CASINO, and SUGARHOUSE HSP GAMING PROP. GP, L.L.C. (hereinafter collectively referred to as "SUGARHOUSE") were Plaintiff's joint and solo employers.

16. At all times material, Defendants SUGARHOUSE operated a casino located at 1001 N. Delaware Avenue, Philadelphia, PA 19125 (hereinafter "the casino.")

17. At all times material, Defendant JAY TARBELL (hereinafter "TARBELL") was employed by Defendants SUGARHOUSE as Director of Human Resources.

18. At all times material, Defendant TARBELL held supervisory authority over Plaintiff.

19. At all times material, Defendant DOMENICK MONTANARO (hereinafter "MONTANARO") was employed by Defendants SUGARHOUSE as a Pit Boss.

20. At all times material, Defendant MONTANARO held supervisory authority over Plaintiff.

## MATERIAL FACTS

21. Plaintiff claims a continuous practice of discrimination and claims a continuing violation, and makes all claims herein under the continuing violations doctrine.

22. Around July 2013, Plaintiff began working for Defendants SUGARHOUSE as a Cage Cashier.

23. As a result of her strong work performance, Plaintiff eventually advanced to a Valet position, and then ultimately to Table Games Dealer, a position change that carried a pay increase to $4.00/hour, plus tips.

24. Around May 2016, Plaintiff became pregnant, and informed Defendants of her pregnancy around the following June.

25. Despite Defendants' complete awareness of Plaintiff's pregnancy and her need to work away from secondhand smoke, Defendants continually scheduled Plaintiff to work in smoking areas despite her repeated requests to work away from secondhand smoke for her unborn child's health.

26. Around December 2016, when Plaintiff was around eight (8) months pregnant, she again requested a move to a non-smoking area of the casino, as she remained worried about the potential harm to her unborn child stemming from constantly working around secondhand smoke.  When Plaintiff asked a Pit Boss named Bernie (Last Name Unknown) ("Bernie") for this accommodation, Bernie told Plaintiff that her pregnancy was an "inconvenience."

27. Plaintiff was highly offended by Bernie's discriminatory comment. Accordingly, Plaintiff reported the incident to her manager Robin (Last Name Unknown) ("Robin.") However, Robin ignored Plaintiff's report, stating that Bernie was "dealing with a hard time" and "sometimes speaks without thinking." Robin stated that she would speak with Bernie about the incident, but upon information and belief, never did so.

28. Around January 31, 2017, Plaintiff gave birth and subsequently went on maternity leave.

29. When Plaintiff returned from her maternity leave around March 2017, her co-workers and supervisors began constantly harassing her and badgering her with highly invasive, inappropriate questions about her pregnancy and her need to pump breast milk while at work.

30. By means of example, Plaintiff's Floor Managers, Pit Bosses, and co-workers would harass Plaintiff by repeatedly stating things like: "Do you *really* need all that time to pump?"; "He's [Plaintiff's newborn son] still drinking all that milk?" and "Shouldn't you switch to formula by now?"

31. At all times, Plaintiff made it clear that she was highly uncomfortable with the harassing and invasive comments and questions. Plaintiff never indicated that she found the comments funny or at all appropriate for the workplace.

32. On one occasion, when Plaintiff was on her way to the pumping room, Defendant MONTANARO stopped her and stated "What happens if you *don't* go in to pump—how big will your boobs actually get?"

33. Plaintiff was shocked and disgusted by MONTANARO's harassing comment. Plaintiff was so offended that she was unable to form a meaningful response.

34. Despite Plaintiff's clear and unequivocal opposition to the harassing conduct, Plaintiff's supervisors and co-workers continued making inappropriate, harassing comments about Plaintiff's breasts and pumping throughout this time.

35. Around August 30, 2017, Plaintiff learned of a promotion opportunity at the casino for which she was well-qualified, and applied for the position. However, Plaintiff was passed over for the position.

36. Upon information and belief, Plaintiff was disregarded for the promotion because of her recent pregnancy and need to take care of her child.

37. The very next day after being denied the promotion, Plaintiff's Shift Manager Robin (Last Name Unknown) approached Plaintiff and told her that there had been "complaints" about Plaintiff's pumping, and questioned if she was "really doing it." Robin then even threatened Plaintiff's continued employment during that conversation, telling her to "watch your back."

38. Soon after, around September 1, 2017, Plaintiff's co-worker Lauren (Last Name Unknown) ("Lauren") approached Plaintiff in a hallway after Plaintiff had been pumping breastmilk, looked at the bottle in Plaintiff's hand, and yelled "Is that all you have left? You've dried out!" Lauren then stated that Plaintiff's pumping breaks were "jacking up everyone's schedule."

39. Following the constant discriminatory and harassing comments, Plaintiff scheduled a meeting with Defendants' Human Resources department that day to formally report the ongoing harassment and attempt to stop it. However, when Plaintiff met with Defendant TARBELL, he dismissed Plaintiff's report, instead asking Plaintiff if she was "taking

advantage" of the pumping breaks, and going on further to question whether the harassment was "all in [Plaintiff's] head."

40. Even more incredibly, Defendants' Human Resources department initially attempted to claim that nobody else was present in the hallway where Lauren had confronted and harassed Plaintiff at the time of the previous incident. When Plaintiff confirmed that this was false (and brought proof of such to Human Resources), she was simply told that it was "none of your concern" and that they would not update Plaintiff on any investigation.

41. Furthermore, Robin later confronted Plaintiff about her report to Human Resources in an attempt to intimidate her, stating that the "worst thing that could happen to [them]" was a write-up and that Lauren had "done this before."

42. The next day, around September 2, another Pit Boss named Melvin (Last Name Unknown) ("Melvin") approached Plaintiff and stated to her "You're beautiful; if only you could stop asking for pump breaks." Once again, Plaintiff was offended by the continued harassment. Furthermore, it was clear that Plaintiff's report to Human Resources had done nothing to address the problem.

43. Around September 7, when Plaintiff was again preparing to take a break to pump milk, she was again harassed by two supervisors, a Pit Boss named Kyle (Last Name Unknown) and a Manager named Sophia (Last Name Unknown) who laughed at Plaintiff and said "Is that boy [referring to Plaintiff's child] not done yet?"

44. Around September 14, Plaintiff attempted to take her regularly-scheduled pumping break. However, when she asked for the key to the pumping room, Defendants' security employee named Tikea (Last Name Unknown) ("Tikea") began angrily yelling at Plaintiff and refused to give her the key.

45. Accordingly, Plaintiff reported Tikea's behavior to Charles Schwosky ("Schwosky"), Defendants' Security Manager, who failed to take Plaintiff's report seriously. Schwosky stated that Tikea was "just high-strung" and that he would "talk to her." Feeling thoroughly humiliated and distressed by this latest incident of the constant harassment, Plaintiff left work after this incident.

46. Around September 15, Plaintiff called Defendants and informed them that she was not returning to work directly because of the constant harassment and discrimination that had continued to go on unchecked.

47. During that call, the manager with whom Plaintiff spoke (Name Unknown) stated to her that "You can't do it like that" and that Plaintiff needed to personally come in and give two weeks' notice. When Plaintiff stated that she actually did not need to do so, the manager became angry, and stated that he was "going to tell everyone about this one."

48. Accordingly, Defendants constructively terminated Plaintiff on account of her sex/gender (specifically, her pregnancy and childbirth), and in retaliation for her complaints in opposition to the above discrimination and sexual harassment. Defendants' actions created a hostile work environment such that no reasonable woman in Plaintiff's position could be expected to continue working under such conditions.

49. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

50. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

52. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages.

53. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

54. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

55. Plaintiff claims alternatively (in the event Defendants claim or the Court so determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not against Individual Defendants)

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

57. Title VII states in relevant parts as follows: SEC. 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

58. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e *et seq.*, by discriminating against and harassing Plaintiff because of her sex/gender.

59. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Not against Individual Defendants)

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

61. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to ... discriminate against any of his employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

62. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
### (Not against Individual Defendants)

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

64. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

65. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex and gender, and due to her pregnancy.

66. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

68. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

69. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER STATE LAW

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

72. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE
### PHILADELPHIA FAIR PRACTICES ORDINANCE

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her

race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

75. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's sex/gender and pregnancy.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

### AS A SEVENTH CAUSE OF ACTION FOR RETALIATION UNDER THE PHILADELPHIA FAIR PRACTICES ORDINANCE

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

78. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

79. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS AN EIGHTH CAUSE OF ACTION
### FOR AIDING AND ABETTING
### UNDER THE PHILADELPHIA FAIR PRACTICES ORDINANCE

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

81. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

82. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
       November 7, 2018

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Rita Mercado*

By: _____
Nathaniel N. Peckham, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Tel. (215) 391-4790
Fax: (215) 893-5288
nathaniel@dereksmithlaw.com